**Anthony RUST, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–0212–CR–594.**

Court of Appeals of Indiana.

Aug. 5, 2003.

Michael C. Borschel, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Anthony Rust brings this interlocutory appeal challenging the trial court's denial of his motion for discharge under Indiana Criminal Rule 4(C). We reverse.

### Issue

The sole issue before us is whether the trial court properly determined that Rust's "Notice of Surrender" did not restart the Criminal Rule 4(C) timing.

### Facts

Charges against Rust were filed in Hancock County on February 26, 2001, and he was released on bond. Rust was then arrested on charges filed in Marion County in the instant case on March 29, 2001. Rust appeared in Marion County at his initial hearing on April 2, 2001. Rust failed to appear for subsequent hearings in both counties, and warrants were issued.

Rust surrendered himself in Hancock County and filed a "Notice of Surrender" in Marion County on October 22, 2001, while being held in the Hancock County Jail. Rust then pled guilty in Hancock County and was sentenced in August 2002. After serving his sentence, Rust was released and brought to Marion County. On October 15, 2002, Rust filed a motion for discharge in the instant case pursuant to Criminal Rule 4(C). In November, the trial court denied the motion, and Rust now brings this interlocutory appeal challenging the denial of his motion.

### Analysis

The right of an accused to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section 12 of the Indiana Constitution. *Clark v. State,* 659 N.E.2d 548, 551 (Ind.1995); *Cole v. State,* 780 N.E.2d 394, 396 (Ind.Ct.App.2002). This fundamental principle of constitutional law has long been zealously guarded by our courts. *Cole,* 780 N.E.2d at 396. Indiana Criminal Rule 4(C) helps protect this right and states:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar. . . . Any defendant so held shall, on motion, be discharged.

 It is well established in Indiana that the burden is upon the State, not the defendant, to bring a defendant to trial within one year. *State v. Hurst,* 688 N.E.2d 402, 408 (Ind.1997). Criminal Rule 4(C) relieves the State from that duty only for a delay caused by the defendant's own act or a continuance had on the defendant's own motion. *Havvard v. State,* 703 N.E.2d 1118, 1120 (Ind.Ct.App.1999). When delay is chargeable to the defendant, the period fixed by the rule is extended only by the period of that delay. *Id.*

 Rust initially appeared in the trial court to answer filed charges in April 2002, thereby triggering his speedy trial right under Criminal Rule 4. Rust agrees that his subsequent failure to appear tolled the clock for purposes of Criminal Rule 4 calculations. When he was incarcerated in Hancock County on other charges, Rust filed a Notice of Surrender in the trial court. The question before us is the effect the Notice of Surrender had on the Criminal Rule 4 timeline. Rust maintains that the notice effectively restarted the clock because he was available to be transported to Marion County for proceedings in this case. The State argues that the clock did not restart until he was brought back to Marion County.

The State relies upon *Landrum v. State,* 428 N.E.2d 1228 (Ind.1981), in support of its argument. The operative facts in that case are:

> Defendant was incarcerated in the Clark County Jail on charges unrelated to those at issue here. Meanwhile, on July 21, 1978, the instant charges were filed in Floyd Superior Court; on August 7, 1978, a copy of a warrant for his arrest, as well as the charges filed in Floyd Superior Court, were read to him by an officer of the Clark County Sheriff's Department. The record reveals his pro se motion to dismiss was prepared on August 16, 1979, served on the prosecuting attorney's office on September 20, 1979, and ultimately filed in Floyd Superior Court on October 1, 1979.

*Id.* at 1229.

In affirming the trial court's denial of Landrum's motion for discharge, our supreme court observed that Landrum's claim was based on the supposition that when the warrant was read to him on August 7, 1978, the reading constituted the "arrest" from which the one-year time frame of Criminal Rule 4(C) began to run. The supreme court noted that it had "specifically held, however, that when a defendant is incarcerated in another county on unrelated charges, 'arrest' for purposes of

Ind.R.Crim.P. 4(A) and (C) does not occur until his return is ordered by the court wherein the second charges have been filed." *Id.* at 1230. Our supreme court thus concluded that the denial of the motion to dismiss was proper. *Id.*

Another case cited by the State is *Maxie v. State*, 481 N.E.2d 1307, 1308 (Ind.1985). There, Maxie was arrested in December 1981 in Lake County on an unrelated charge. On the same day as the arrest, LaPorte County officials filed a detainer against him. Maxie was arrested for the instant charge on September 14, 1982, and on September 17, 1982, an information for robbery was filed in LaPorte County. Maxie was transferred to LaPorte County, and on September 24, 1982, he appeared before the LaPorte Superior Court. On the first day of trial, January 31, 1983, Maxie filed a Motion to Dismiss that alleged a speedy trial violation. The trial court denied the motion. Quoting its holding in *Landrum* and noting it was directly on point, our supreme court held that the "arrest" did not occur until Maxie's return was ordered by the court where the second charges were filed. *Id.*

A more recent case relied upon by the State is *State v. Helton*, 625 N.E.2d 1277, 1278 (Ind.Ct.App.1993). In that case, Howard County, Cass County and State police searched Helton's residence on July 30, 1991. They discovered firearms that had been stolen from a Cass County gun store. Later that day in a statement to police, Helton's brother implicated Helton in the Cass County burglary and a Howard County robbery. On July 31, 1991, the Howard County prosecutor filed an information charging Helton with robbery, a Class B felony, and conspiracy to commit robbery, a Class B felony. On the same day, a warrant was issued for Helton's arrest on the Howard County charges. Helton was being held in the Cass County

jail when the warrant from both of the counties was read to him.

In November 1992, Helton had been sentenced on the Cass County charge and was serving a term of imprisonment when the Howard Circuit Court ordered his transportation to Howard County for an initial hearing on the Howard County charges. On January 19, 1993, Helton filed his motion to dismiss the charges pursuant to Criminal Rule 4(C), which the trial court granted.

On appeal, we noted courts have consistently held that when a defendant is incarcerated in another county on unrelated charges, "arrest" for purposes of Criminal Rule 4(C) does not occur until his return is ordered by the court wherein the second charges have been filed. *Id.* (citing *Maxie*, 481 N.E.2d at 1309). We acknowledged Helton's argument that the rule should not apply in his case because the Cass County warrant and the Howard County warrant were read to him at the same time and that he was not necessarily incarcerated on the Cass County charges first.

We concluded, however, that Helton's focus "misse[d] the pertinent inquiry." *Id.* at 1278. We reiterated that the determinative factors were where the defendant was being held and whether the incarceration was for the purpose of unrelated charges. Helton was incarcerated in Cass County. Even though unrelated charges were filed against Helton, we concluded the "arrest" on the Howard County charges did not occur until November 1992, when Helton was ordered to be returned for an initial hearing. *Id.*

In all three of these cases, the defendant was incarcerated in one county when charges were filed in another county. As such, it is logical that the holdings in those cases were consistent with the principle that the "arrest" does not occur until the defendant's return is ordered by the court

where the second charges were filed. That is not the case here. In Rust's case, the Marion County case had already commenced when Rust was incarcerated in Hancock County on unrelated charges. Rust had already appeared once and then subsequently failed to appear at another hearing. The clock was clearly tolled for purposes of Criminal Rule 4(C) when he failed to appear. However, once the trial court and the State were notified via the Notice of Surrender where Rust was incarcerated, the State was obligated to proceed with the case in a timely manner. Because the case had already commenced prior to the Hancock County charges, the State could not simply wait until the Hancock County sentence was satisfied before moving forward with the Marion County charges. Had the Marion County case not been midstream when Rust was incarcerated in Hancock County, our conclusion today would no doubt be different as dictated by *Helton*, *Maxie*, and *Landrum*. Under the particular facts of this case, however, we conclude that Rust's motion for discharge should have been granted.

### Conclusion

Once the State was notified of Rust's incarceration in Hancock County on unrelated charges, it was obligated to proceed with the Marion County case because he had already been arrested and the case was already underway. The failure to do so and to bring Rust to trial within the appropriate time violated Criminal Rule 4(C). We reverse the denial of Rust's motion for discharge.

Reversed.

RILEY, J., and SHARPNACK, J., concur.